UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RODNEY BRANHAM,

                Plaintiff,                Case No. 2:06-cv-262

v.                                         Honorable R. Allan Edgar

DAVID BERGH, et al.,

                Defendants.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Rodney Branham, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Warden David Bergh, Resident Unit Manager Curt Rife, Assistant Resident Unit Supervisor Thomas Salo, Lloyd Rapelje, Sergeant Unknown Nowaki, Captain Unknown Immel, Mary Hite R.N., Sergeant Unknown Lee, Resident Unit Officer Unknown LaVigne, Resident Unit Officer Unknown Mason, Resident Unit Officer Unknown Wickstrom, Resident Unit Officer Unknown Polander, Resident Unit Officer Unknown Vinning, Lieutenant Unknown Nord, Resident Unit Officer Unknown Weber, Resident Unit Officer Unknown Lancourt, Resident Unit Officer Unknown Kurtha, Corrections Officer J. Wilkins, Resident Unit Officer Tracy Berg, and Unknown Coolman, all of whom are employed at LMF.

As noted by Defendants, Plaintiff's amended complaint is voluminous and largely incoherent. Plaintiff claims that Defendants conspired to deprive him of his prescribed medications

in deliberate indifference to his Pancreatitis, Anemia, and Chronic Obstructive Pulmonary Disease. In addition, Plaintiff claims that Defendants denied him food and that Defendants Holman, Rife, Salo and Bergh retaliated against him for the exercise of protected conduct.  For relief, Plaintiff requests compensatory and punitive damages.

Presently before the Court is the Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably

find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendants contend that Plaintiff's pauper status should be revoked because Plaintiff has three strikes. In support of this claim, Defendants attach a copy of a docket sheet from the Eastern District of Michigan in Case No. 4:01-cv-40246. As noted by Defendants, the docket sheet reveals that on October 25, 2001, the court ordered the case dismissed pursuant to 28 U.S.C. 1915(g) because Plaintiff had three strikes. (*See* Defendants' Exhibit F, p. 2.) However, Defendants fail to attach a copy of the order of dismissal, nor do they list the cases being relied upon as strikes. Therefore, the undersigned concludes that Defendants failed to adequately support their contention that Plaintiff has three strikes.

Defendants also claim that they are entitled to summary judgment on Plaintiff's claims because he failed to exhaust his administrative remedies. A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."

---

[1] The MDOC amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

*Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

In this case, Defendants assert that Plaintiff arrived at LMF on November 5, 2004, and has incurred 298 major misconducts since that date. On October 11, 2006, at 6:55 a.m., Defendant Holman was picking up inmates' breakfast trays when Plaintiff assaulted Defendant Holman with the food cart and trays. Defendants offer copies of the affidavits of Defendants Bergh

5

and Holman, as well as the log book entry describing the incident. (*See* Defendants' Exhibits A - B.)  Defendant Holman issued a major misconduct report on Plaintiff, which states that Plaintiff intentionally struck the cart with his tray and pushed it into Defendant Holman's tray.  The report further stated that Plaintiff threatened Defendant Holman, stating that he would "fuck" Defendant Holman if he was allowed out into the yard. (*See* Defendants' Exhibit C.)  Defendant Holman also requested that Plaintiff be placed on food loaf restriction. (*See* Defendants' Exhibit D.)

Plaintiff's amended complaint asserts that his treatment on October 11, 2006, and his subsequent placement on food loaf, violated his constitutional rights.  Defendants state that Plaintiff filed his original complaint in this case on October 19, 2006.  Therefore, Defendants state that Plaintiff could not have exhausted his remedies as to these claims by the time he filed his complaint.  The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).  The administrative process must be complete before the prisoner files an action in federal court. *Id.*  In addition, the undersigned notes that Plaintiff's amended complaint relates back to the filing date of the original complaint pursuant to Fed. R. Civ. P. 15(c)(1)(B).  Therefore, Defendants appear to be correct in asserting that Plaintiff's claims arising out of the October 2006 incidents are not exhausted.

Defendants claim that even if Plaintiff had exhausted his administrative remedies, they are entitled to summary judgment on his claim that he was improperly placed on food loaf because such an action does not rise to the level of an Eighth Amendment deprivation.  Defendants attach a copy of the policy regarding food loaf to their brief.  According to the policy, unless a prisoner is on a medically prescribed liquid or pureed diet, he may be placed on food loaf if the prisoner is misusing food, serving trays or utensils.  The policy requires that the Warden or designee

6

approve any placement on food loaf and that the Food Service Director or designee contact appropriate health care staff to determine if the prisoner has any food allergies or other medical condition that would affect feed the prisoner a food loaf. (*See* MICH. DEP'T OF CORR., Policy Directive 04.05.120, ¶¶ LL-OO (effective Mar. 27, 2006), Defendants' Exhibit E.) In addition, the policy provides:

> The prisoner shall not be fed a food loaf that contains any food item to which the prisoner is known to be allergic or is otherwise medically contraindicated. Unless the prisoner is unable to be fed food loaf for medical reasons, the prisoner shall be provided food loaf in lieu of his/her regular meals beginning at the next scheduled meal and for the duration of the approved period. The food loaf shall be tightly wrapped and sealed and carried to the prisoner's cell on a tray; however, the prisoner shall be given only the wrapped loaf and not the tray. The loaf shall be provided during the regular breakfast, lunch and dinner times. A prisoner on food loaf shall be provided drinking water in his/her cell, which shall be through a drinking faucet or "bubbler" where available.

(*See* Policy Directive 04.05.120, ¶¶MM, Defendants' Exhibit E.)

Plaintiff's Eighth Amendment claim regarding the food loaf restriction fails. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348. With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Sixth Circuit has repeatedly held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir.

Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990).

Plaintiff claims that his placement on food loaf interfered with a medically prescribed diet for pancreatitis. Defendants state that Defendant Nowacki checked with prison medical staff prior to Plaintiff's placement on food loaf and that the restriction was approved by health care staff. In addition, Defendants offer a copy of the food loaf request form showing that such approval was obtained. (*See* Defendants' Exhibit D.) Plaintiff fails to show that the diet placed him at medical risk or that he suffered any adverse physical consequences as a result of his placement on food loaf. Therefore, Defendants are entitled to summary judgment on Plaintiff's claim that he was improperly placed on food loaf.

Defendants also claim that they are entitled to summary judgment on Plaintiff's retaliation claim regarding his placement on food loaf. Plaintiff claims that Defendant Holman retaliated against him because he complained to the facility inspector. Plaintiff also claims that Defendants Rive, Salo and Bergh retaliated against him because Plaintiff filed a case in the United States Supreme Court. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff's actions in filing complaints and lawsuits is protected conduct.

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). In this case, Plaintiff claims that his placement on food loaf constituted retaliatory conduct. However, in the opinion of the undersigned, such a restriction for a period of seven days is insufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. Moreover, the undersigned notes that Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that he was placed on food loaf because he exercised his First Amendment right of filing complaints and lawsuits. Accordingly, Defendants are entitled to summary judgment on this claim.

Defendants also claim that Defendants Rife, Salo and Bergh are entitled to summary judgment for lack of personal involvement. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th

Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

As noted by Defendants, Plaintiff has not alleged facts establishing that Defendants Rife, Salo, and Bergh were personally involved in the activity which forms the basis of his claim. The only roles of Defendants Rife, Salo, and Bergh in this action involve the denial of administrative grievances or the failure to act. Defendants Rife, Salo, and Bergh cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Rife, Salo, and Bergh are entitled to summary judgment for lack of personal involvement.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' motion for dismissal and/or summary judgment (Docket #84) be granted and this case be dismissed without prejudice for failure to exhaust administrative remedies. Alternatively, should the court find that Plaintiff did exhaust his administrative remedies, Defendants are entitled to summary judgment because Plaintiff's claims lack merit.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated:   January 23, 2009